UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



STEVEN ALEXANDER BREAUX,

Plaintiff,

v.

DEPUTY ASHBY, et al.,

Defendants.

ACTION NO. 2:10cv526

## DISMISSAL ORDER

Plaintiff, a Virginia inmate, brings this pro se action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. Specifically, Plaintiff claims that Defendants subjected him to excessive force. Plaintiff seeks $200,000.

### I. Procedural History

After Plaintiff qualified to proceed *in forma pauperis*, Defendants filed a motion for summary judgment and a memorandum and affidavits in support thereof. In accordance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), Plaintiff was given an opportunity to respond to Defendants' motion with any material that he wished to offer in rebuttal. Plaintiff was advised that failure to submit any materials could result in an adverse judgment based on Defendants' motion and accompanying affidavits. Plaintiff filed a Response, and Defendants filed a Reply. Although all allowable filings had been received by the Court, Plaintiff filed a purported second Response, wherein he describes all of Defendants' actions as sadistic and malicious. Moreover, Plaintiff adds details not found in the Complaint. Plaintiff cannot assert new facts by raising them in his brief in opposition to Defendants' Motion for Summary Judgment. Shanahan v.

City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) (holding that a complaint cannot be amended by a brief in opposition to a motion for summary judgment). Although Plaintiff was clearly aware of the need to file an affidavit to oppose the Motion for Summary Judgment, Plaintiff's proposed second Response is not in affidavit form. Moreover, Plaintiff did not move for leave to file a supplemental Response. Accordingly, the Court cannot consider Plaintiff's attempt to file a second Response.

Plaintiff also filed a Motion to Compel discovery. Plaintiff seeks all grievance complaints filed against Defendants and all criminal records of Defendants. Defendants objected on the grounds that these documents are not relevant to any issue raised in the Complaint. The Court agrees. There has been no suggestion that these documents would establish what occurred on August 11 and September 10, 2010. Moreover, Plaintiff points to no specific incident in any of the Defendants' pasts that would tend to support his claim of excessive force. See Santiago v. Smithson, 05cv512, 2008 U.S. Dist. LEXIS 5088 (S.D. Ill. May 21, 2008) (upholding magistrate judge's denial of motion to compel seeking grievances filed against the defendant correctional officers and their disciplinary histories); see also Federal Rule of Evidence 404(b). Accordingly, Plaintiff's Motion to Compel is **DENIED**.

The parties have submitted all allowable documents. Accordingly, this matter is ripe for judicial determination.

## II. Facts

There is little disagreement between the parties as to the basic facts of this case. The primary disagreement is whether the force used was excessive. In his Response to Defendants' Motion for Summary Judgment, Plaintiff submits an affidavit in which he swears that his Complaint is true and

2

opposes all of Defendants reasons for requesting summary judgment. Plaintiff states that he opposes "every inaccurate and self-serving statement of the Defendants." Pl.'s Ex. A. However, Plaintiff does not identify with any specificity which of Defendants' statements are inaccurate and self-serving. Many of the facts asserted by Defendants are the same as the facts asserted by Plaintiff. Therefore, Plaintiff cannot claim to be opposed to all of Defendants' facts. Moreover, Plaintiff makes no mention of opposing the facts asserted by Deputy Maddrey, who is not a Defendant in this action. Therefore, the Court has set forth the undisputed facts of the case noting those facts upon which the parties disagree based on the Complaint and Defendants' facts.

On August 11, 2010, Deputy Maddrey ("Maddrey"), Deputy Ashby ("Ashby"), and Deputy Coryell ("Coryell") were conducting cell inspections. During the inspection, Maddrey discovered brown paper bags under the mat in Plaintiff's cell. Compl. ¶ 1; Maddrey Aff. ¶ 2. Plaintiff was not authorized to have the paper bags in his cell. Ashby Aff. ¶ 2. Defendants contend the bags were empty. Plaintiff contends the bags contained unspecified paperwork. Maddrey threw the bags to the floor and continued on to the next cell. Plaintiff reentered the cell to retrieve the brown paper bags. Plaintiff was ordered to step out of the cell. Coryell Aff. ¶ 2. Corporal Ulrich ("Ulrich") arrived on the cell block as Plaintiff was protesting the actions of Maddrey. Id. Defendant Ulrich decided to remove Plaintiff from general population based on his disruptive behavior. While escorting Plaintiff from the cell block, Ulrich placed his hand on Plaintiff's back. Compl. ¶ 1; Ulrich Aff. ¶ 4. Plaintiff stated to Defendant Ulrich that he was cooperating and that Ulrich did not have to push. Compl. ¶ 1. However, Plaintiff clenched his fist and turned toward Defendant Ulrich as if to swing at him. Asby Aff. ¶ 2; Coryell Aff. ¶ 2; Maddrey Aff. ¶ 3; Ulrich Aff. ¶ 4. Defendant Ulrich took Plaintiff to the ground. Id.; Compl. ¶ 1. Defendant Ulrich admits he struck Plaintiff once during the ensuing

struggle in order to gain control of Plaintiff. Plaintiff claims that he was hit and kicked. Plaintiff was placed into handcuffs. Plaintiff claims that while he was being handcuffed Defendant Coryell bent Plaintiff's wrist. Compl. ¶1.

Plaintiff was taken to the medical department at the facility, where he complained of wrist soreness. The record indicates that no swelling was observed, and Plaintiff was prescribed Motrin. Plaintiff alleges no other injury in the Complaint. However, in his Response to Defendants' Motion for Summary Judgment, Plaintiff claims he will prove that he suffered unspecified physical and mental injuries that are serious and lasting. Pl.'s Ex. A. Plaintiff was charged with attempt to assault a staff member and refusing a direct order. Ulrich Aff. ¶ 5. P As a result of his behavior, Plaintiff was reclassified to administrative segregation. Id.

On September 10, 2010, a month after the first incident, Corporal Jennings ("Jennings") was escorting Plaintiff to the medical department. Defendant Jennings held Plaintiff by the back of his jumpsuit. Compl. ¶ 2; Defs.' Ex. 7.[1] Plaintiff told Defendant Jennings to stop pulling on his jumpsuit, and Defendant Jennings threatened to take Plaintiff back to his cell rather than to medical. Deputy Robinson ("Robinson") observed Plaintiff and Defendant Jennings in a verbal confrontation and went to assist Defendant Jennings. Robinson Aff. ¶ 2. Defendant Jennings told Robinson that he was taking Plaintiff back to his cell. Compl. ¶ 2; Robinson Aff. ¶ 2. Once Plaintiff was returned to his cell, Defendant Robinson assisted Defendant Jennings with the removal of Plaintiff's leg irons. Id. Plaintiff then placed his arms through the chuck hole for removal of the handcuffs. Id. During

---

[1]Exhibit 7 is a violation report written by Defendant Jennings. Defendant Jennings is deceased; therefore, there is no affidavit from Defendant Jennings. Thus, the report, which is a record kept in the ordinary course of business, is the only indication in the record of Defendant Jennings' intent. In the report Defendant Jennings states: "I was holding the back of his jumpsuit so that he would not fall down the stairs."

this process the drop chain was between Plaintiff's legs. Id. Plaintiff claims that while pulling the chain through, Defendant Robinson yanked the chain hard into Plaintiff's crotch. Compl. ¶ 2, while, Defendant Robinson denies pulling the chain in a manner that would cause Plaintiff pain. Robinson Aff. ¶ 3. Plaintiff alleges no injury as a result of this incident.

III. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993). Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment

5

when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment

. . . against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex

Corp., 477 U.S. at 322.[2]

Although a court must draw all justifiable inferences in favor of the nonmoving party, in

order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more

than conclusory allegations, "mere speculation," the "building of one inference upon another," the

"mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt"

concerning a material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Thompson

v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Tao of Sys. Integration, Inc. v.

Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence

must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477

U.S. at 252.

### B. Applicable Legal Standard

The Supreme Court has determined that § 1983 of Title 42 of the U.S. Code provides the

basis for a cause of action to challenge unconstitutional actions by state officials. Monroe v. Pape,

365 U.S. 167 (1961). The Supreme Court extended this remedy to prisoners in Cooper v. Pate, 378

U.S. 546 (1964), and Houghton v. Shafer, 392 U.S. 639 (1968).

---

[2]Recent amendments to the Federal Rules of Civil Procedure, which became effective on
December 1, 2010, moved the relevant language from section (c)(2) of Rule 56 to its present location
in section (a). However, the advisory committee's note indicates that, despite these amendments,
"[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory
committee's note.

A court's analysis of a civil rights claim, like the one in this case, "begins by identifying the specific constitutional right[s] allegedly infringed by the challenged" actions. Graham v. Connor, 490 U.S. 386, 394 (1989). Pretrial detainees held in jail are protected under the Due Process Clause of the Fourteenth Amendment, whereas persons who have been convicted and incarcerated are protected from cruel and unusual conditions under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Martin v. Gentile, 848 F.2d 863, 870 (4th Cir. 1988). Plaintiff was incarcerated as a result of convictions in state court. Therefore, Plaintiff's claim arises under the Eighth Amendment.

The Eighth Amendment, enforced against the states through the Due Process provisions of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." U.S. Const. amends. VIII, XIV. The Supreme Court has explained that the Eighth Amendment, therefore, protects inmates from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations omitted). To establish an Eighth Amendment excessive force claim, an inmate must satisfy a subjective component--that the prison official acted with a sufficiently culpable state of mind--and an objective component--that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Plaintiff's Eighth Amendment excessive force claim must be measured according to the standards set forth in Whitley. In order to establish an Eighth Amendment claim, Plaintiff must allege and prove "obduracy and wantonness, not inadvertence or error in good faith . . . ." Whitley, 475 U.S. at 319. The issue is whether the Defendant inflicted unnecessary and wanton pain and suffering. With respect to the subjective element, the Court must inquire "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

7

purpose of causing harm." Id. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). The Supreme Court has set out the following factors for a district court to use in evaluating whether a prison official acted maliciously and sadistically: (1) the need for the use of force, (2) "the relationship between that need and the amount of force used," (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The absence of serious injury is also relevant, though not dispositive of the subjective analysis. Id.

With respect to the objective element, a prisoner "asserting malicious and sadistic use of force need not show that such force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action." Williams, 77 F.3d at 761 (quoting Hudson, 503 U.S. at 9). However, it is clear that not every touching is of constitutional significance.

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

Glick, 481 F.2d at 1033.

### C. Discussion

Plaintiff's claims against Defendant Ulrich (taking Plaintiff to the floor and striking Plaintiff when he was on the floor) and Defendant Coryell (bending Plaintiff's wrist) are the only claims that bear discussion. The remaining claims involve incidental touches that may have involved more contact than technically required. However, they do not even come close to a use of force that can be considered cruel and unusual punishment.

8

Plaintiff claims that Defendant Ulrich took him to the floor. However, the record makes it clear that Defendant Ulrich and the other deputies who witnessed the events believed that Plaintiff was attempting to swing at Defendant Ulrich. Therefore, taking Plaintiff to the floor occurred in response to a perceived threat, rather than maliciously and sadistically. Moreover, as Defendant Ashby points out, the other inmates were out of their cells, and order needed to be restored quickly. Ashby Aff. ¶ 4. Defendant Ulrich admits striking Plaintiff while he was on the floor. However, he asserts that he was attempting to gain control of Plaintiff. Importantly, Plaintiff does not allege any injury as a result of being taken to the floor or from Defendant Ulrich striking him. The only injury alleged by Plaintiff from this altercation was a sore wrist resulting from Defendant Coryell allegedly bending Plaintiff's wrist. Assuming for purposes of summary judgment that Defendant Coryell did bend Plaintiff's wrist, there is nothing in the record to suggest that it was done maliciously or sadistically. Defendants were struggling with Plaintiff to get the handcuffs on Plaintiff. There is nothing, other than Plaintiff's unsupported allegation, to suggest that injury to Plaintiff's wrist resulted from anything other than an attempt to get Plaintiff under control and into handcuffs.

Plaintiff's pleadings in this case make it clear that he considers any unnecessary touching to be a violation of the Eighth Amendment. However, this is simply not the case. See Glick, 481 F.2d at 1033. Moreover, correctional officers may use reasonable force to restore order and control inmates. See Hudson, 503 U.S. at 7.

### IV. Conclusion

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

Plaintiff is advised that he may appeal from this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this Dismissal Order.

If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Dismissal Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

_____
/s/
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 8 , 2012

10